# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 23, 2012 Session

## MARVIN BERNATSKY AND PATRICIA BERNATSKY
### v.
## DESIGNER BATHS & KITCHENS, LLC

**An Appeal from the Circuit Court for Shelby County**
**No. CT-006113-10      James F. Russell, Judge**

---

**No. W2012-00803-COA-R3-CV - Filed February 15, 2013**

---

In this case, we address the bond requirements for an appeal from General Sessions Court to Circuit Court. The plaintiffs sued the defendant for damages in General Sessions Court, and a judgment was entered in favor of the defendant. The plaintiffs sought a *de novo* appeal to Circuit Court. Within ten days of the General Sessions Court judgment, the plaintiffs filed a notice of appeal and paid $211.50 to the General Sessions Court clerk, pursuant to T.C.A. § 8-21-401(b)(1)(C)(i). The plaintiffs did not file any further bond at that time, but later filed a $500 cost bond. The Circuit Court dismissed the appeal *sua sponte*, holding that it lacked subject-matter jurisdiction because the plaintiffs had failed to comply with the appeal-bond requirement in T.C.A. § 27-5-103. The plaintiffs now appeal. After careful review of the statutes and caselaw, we overrule this Court's prior decision in ***Jacob v. Partee***, No. W2012-00205-COA-R3-CV, 2012 WL 3249605 (Tenn. Ct. App. Aug 10, 2012), and conclude that payment of a cash bond in the amount of the statutory court costs set out in Section 8-21-401(b)(1)(C)(i) satisfied the plaintiffs' obligation to "give bond with good security . . . for the costs of the appeal" under Section 27-5-103(a), and so the Circuit Court had subject-matter jurisdiction over the appeal. Accordingly, we reverse the Circuit Court's dismissal of the action and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is**
**Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court. DAVID R. FARMER, J., joined in the opinion of the Court, and also filed a separate concurring opinion. J. STEVEN STAFFORD, J., filed a separate concurring opinion.

Steven R. Walker, Oakland, Tennessee, for the Plaintiffs/Appellants Marvin Bernatsky and Patricia Bernatsky

Robert A. Wampler, Memphis, Tennessee, for the Defendant/Appellee Designer Baths & Kitchens, LLC (no brief filed)

## OPINION

### FACTS AND PROCEEDINGS BELOW

The facts relevant to the issues in this appeal are undisputed. On July 22, 2008, Plaintiff/Appellants Marvin and Patricia Bernatsky filed a civil warrant in the General Sessions Court of Shelby County, Tennessee, against Defendant/Appellee Designer Baths & Kitchens, LLC ("Designer Baths"), alleging negligent work in the installation of a bathroom tub and shower fixtures. On December 9, 2010, without conducting a trial, the General Sessions Court entered a judgment for Designer Baths. According to the Bernatskys, they voluntarily allowed a judgment to be entered in favor of Designer Baths, because they intended to seek a *de novo* appeal to Circuit Court.[1]

On the day the General Sessions Court judgment was entered, the Bernatskys filed a notice of appeal in the General Sessions Court clerk's office to appeal the case to Circuit Court. At the same time, they paid the General Sessions Court clerk $211.50, which included the $150 standard court cost for filing appeals from General Sessions Court to Circuit Court set out in Tennessee Code Annotated § 8-21-401. They filed nothing further at that time. Eight months later, on August 22, 2011, the Bernatskys filed a cost bond in the Circuit Court in the amount of $500.

On September 27, 2011, acting *sua sponte*, the Circuit Court entered an order dismissing the appeal from General Sessions Court. The Circuit Court held that the Bernatskys had not satisfied the requirement that they file an appeal bond within ten days of the General Sessions Court judgment pursuant to Tennessee Code Annotated § 27-5-103. That statute, which is central to this appeal, provides as follows:

> (a) Before the appeal is granted, the person appealing shall give bond with good security, as hereinafter provided, for the costs of the appeal, or take the oath for poor persons.

---

[1]The record indicates that the parties initially attempted to remove the case to Circuit Court by consent, but were not permitted to do so.

> (b) An appeal bond filed by a plaintiff or defendant pursuant to this chapter shall be considered sufficient if it secures the cost of the cause on appeal.

Tenn. Code Ann. § 27-5-103 (2000). On this basis, the Circuit Court held that it did not have subject-matter jurisdiction over the case. Consequently, the Circuit Court dismissed the appeal.

On October 14, 2011, the Bernatskys filed a motion to alter or amend the order of dismissal pursuant to Rule 59 of the Tennessee Rules of Civil Procedure.[2] The Bernatskys argued that paying the standard court cost for an appeal satisfies the appeal-bond requirement in Section 27-5-103 or, alternatively, that "the requirement of [an appeal] bond was superseded by the 2005 amendment to T.C.A. § 8-21-401." On March 12, 2012, the Circuit Court issued a lengthy memorandum opinion denying the Bernatskys' motion to alter or amend. The Circuit Court reviewed the pertinent statutes and caselaw and set out the basis for its conclusion that the appeal-bond requirement for an appeal from General Sessions Court had not been satisfied. The Circuit Court explained that Sections 8-21-401 and 27-5-103 serve two distinct purposes. Section 8-21-401, the so-called "filing fee" statute, "promulgates a uniform system of costs and fees on a statewide basis," and sets $150 as "the *administrative* cost of the appeal." (Emphasis in original). On the other hand, Section 27-5-103 is jurisdictional and requires the appellant to "satisfy the cost of the *cause* on appeal" by posting a bond. (Emphasis in original). Based on this distinction, the Circuit Court specifically rejected the Bernatskys' argument that Section 8-21-401 implicitly superceded or repealed Section 27-5-103. The Circuit Court stated further in its memorandum opinion that, because Section 27-5-103 does not specify a dollar amount for the required appeal bond, any "bond that sets forth a specific dollar amount (be it $250.00, $1,000.00, or any amount whatsoever) would be considered non-compliant. The purpose [of the statute] is to secure all costs without limitation." Thus, the Circuit Court denied the motion to alter or amend and adhered to its previous ruling that the Bernatskys had failed to file an appeal bond and so had never perfected their appeal. From this order, the Bernatskys now appeal.[3] Designer Baths did not file an appellate brief in this appeal.

---

[2]The Bernatskys undertook to represent themselves during these proceedings until October 17, 2011, when their current counsel filed a notice of appearance on their behalf.

[3]Because the Circuit Court's March 12, 2012 order "remanded" the case to the General Sessions Court, the Bernatskys filed a motion in the General Sessions Court to place the case back on the docket for trial. The General Sessions Court refused to take such action due to filing of the instant appeal to this Court.

The sole issue raised by the Bernatskys on appeal is whether the Circuit Court erred in dismissing their appeal from General Sessions Court *sua sponte* based on lack of subject-matter jurisdiction. Subject-matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. ***Osborn v. Marr***, 127 S.W.3d 737, 739 (Tenn. 2004); ***Earls v. Mendoza***, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at \*5 (Tenn. Ct. App. Aug. 10, 2011). "In the absence of subject-matter jurisdiction, a court cannot enter a valid, enforceable order." ***Earls***, 2011 WL 3481007, at \*5 (citing ***Brown v. Brown***, 281 S.W.2d 492, 497 (Tenn. 1955)). When subject-matter jurisdiction is questioned, we must ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred upon the court the power to adjudicate the case before it. ***Id.*** (citing ***Staats v. McKinnon***, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is *de novo*, without a presumption of correctness." ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000).

Our analysis regarding subject-matter jurisdiction in this case depends on our interpretation of the relevant statutes. Questions of statutory interpretation are issues of law, which are also reviewed *de novo*, with no presumption of correctness given to the decision of the Circuit Court below. ***Button v. Waite***, 208 S.W.3d 366, 369 (Tenn. 2006) (citing ***State v. Collins***, 166 S.W.3d 721, 725 (Tenn. 2005)).

## ANALYSIS

### Jurisdictional Requirements

As provided by statute in Tennessee, "[a]ny party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with the provisions of this chapter [(Title 27 Chapter 5)]." Tenn. Code Ann. § 27-5-108(a)(1) (Supp. 2012). The appeal from General Sessions "is heard *de novo*" by the Circuit Court. ***Id.*** at § 27-5-108(c)*.* If an appeal is not perfected within ten days, then execution on the General Sessions Court judgment may issue. ***Id.*** at § 27-5-108(d).

Under Section 27-5-103, a party who seeks to appeal from General Sessions Court to Circuit Court must do two things: (1) file a notice of appeal, and (2) either "give bond with good security . . . for the costs of the appeal" or, alternatively, file an affidavit of indigency. ***Sturgis v. Thompson***, No. W2010-02024-COA-R3-CV, 2011 WL 2416066, at \*2-3 (Tenn. Ct. App. June 13, 2011). These requirements are jurisdictional, and the Circuit Court does not acquire subject-matter jurisdiction over the appeal unless these prerequisites are satisfied.

*Id.* at \*3 (citing ***Discover Bank v. McCullogh***, No. M2006-01272-COA-R3-CV, 2008 WL 245976, at \*8 (Tenn. Ct. App. Jan. 29, 2008)); *see also **Jacob v. Partee***, No. W2012-00205-COA-R3-CV, 2012 WL 3249605, at \*2, \*5 (Tenn. Ct. App. Aug. 10, 2012), *perm. app. denied* (Tenn. Dec. 12, 2012); ***Carter v. Batts***, 373 S.W.3d 547, 551 (Tenn. Ct. App. 2011), *perm. app. denied* (Tenn. Apr. 11, 2012); ***Brady v. Valentine***, No. 01-A-019707CV00308, 1998 WL 83746, at \*2 (Tenn. Ct. App. Feb. 27, 1998). "The failure of an appellant from general sessions court to comply with the statutory security requirement means that the circuit court never acquires subject matter jurisdiction over the appeal . . . ." ***Sturgis***, 2011 WL 2416066, at \*3 (citing ***Discover Bank***, 2008 WL 245976, at \*8); *see **Jacob***, 2012 WL 3249605, at \*4 (explaining that compliance with Section 27-5-103 is not a mere formality but is jurisdictional in nature); ***Carter***, 373 S.W.3d at 551 (noting that an appeal is not perfected unless the security requirement is satisfied).

The issue in this case relates to the requirement in Section 27-5-103 to "give bond with good security . . . for the costs of the appeal." The bond to which this provision refers has been called, among other things, an "appeal bond," a "cost bond," a "surety bond," or an "appeal bond for costs." ***See, e.g., Jacob***, 2012 WL 3249605, at \*3 (referring to the requirement of filing an "appeal bond"); ***Carter***, at 373 S.W.3d at 550-51 (referring to the terms "appeal bond" and "cost bond" interchangeably); ***Sturgis***, 2011 WL 2416066, at \*3 (referring to the terms "appeal bond" and "cost bond" interchangeably); ***Discover Bank***, 2008 WL 245976, at \*6 (referring to the terms "appeal bond" and "cost bond" interchangeably); ***Patterson v. Carr***, No. 3048, 1988 WL 138202, at \*1 (Tenn. Ct. App. Dec. 27, 1988) (referring to an "appeal bond for costs"); *see also **City of Red Boiling Springs v. Whitley***, 777 S.W.2d 706, 708 (Tenn. Ct. App. 1989) (noting the requirement of filing a "bond in some form"). In this opinion, we will generally refer to the bond in Section 27-5-103 as an "appeal bond."

As noted above, when they filed their appeal to the Circuit Court, the Bernatskys paid a total of $211.50 to the General Sessions Court clerk. This amount included $150 in standard court cost as set forth in Section 8-21-401(b)(1)(C)(i).[4]

On appeal, the Bernatskys argue that the Circuit Court misconstrued Section 27-5-103 in dismissing their appeal for failure to file an appeal bond. They make the same arguments as

---

[4]This provision, under a section titled "Fees in civil cases in circuit and chancery court," states:

> (1)(C ) In the following specific types of civil actions, the clerk shall charge a standard court cost of one hundred fifty dollars ($150) at the institution of a case:
>
> > (i) Appeals to the circuit . . . court from . . . general sessions court . . . .

Tenn. Code Ann. § 8-21-401(b)(1)(C)(i) (2005).

they made to the Circuit Court, contending that the statute must be construed in harmony with the later-enacted Section 8-21-401. They note first that Section 8-21-401(b)(1)(C)(i) specifically sets forth the standard court cost for an appeal from General Sessions Court to Circuit Court. They argue that their payment of this standard court cost satisfied the requirement of Section 27-5-103 to "give bond with good security . . . for the costs of the appeal." The Bernatskys further claim, as they did in the Circuit Court, that if the two statutes cannot be construed in harmony, then we must conclude that the enactment of Section 8-21-401 implicitly repealed Section 27-5-103, and that an appeal bond is no longer required when the statutory standard court cost is paid within ten days of the General Sessions Court judgment.

Thus, we are charged with construing the pertinent statutes to determine whether the requirements of Section 27-5-103 were satisfied.

### Rules of Statutory Construction

In construing a statute, our duty "is to ascertain and give effect to the intention and purpose of the legislature." *Jordan v. Knox County*, 213 S.W.3d 751, 763 (Tenn. 2007). Whenever possible, we should glean this intent from the plain and ordinary meaning of the statutory language. *Id.* A statute should be read naturally and reasonably, presuming that the legislature says what it means and means what it says. *See In re Samaria S.*, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011). If the language of a statute is clear, we apply the plain meaning of the statute without complicating the task and without giving it "a forced interpretation that would limit or expand the statute's application." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

"The legislative process does not always produce precisely drawn laws." *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). A statute is ambiguous if it lacks precision or is fairly susceptible to more than one interpretation. *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001); *Evans v. Young*, 299 S.W.2d 218, 224 (Tenn. 1957) (Tomlinson, concurring). If the statute is ambiguous, we look behind the face of the statute, referring "to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose." *Eastman Chem. Co.*, 151 S.W.3d at 507. We must construe a statute "in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose." *Id*. "The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Id.*

When the legislature has enacted more than one statute relating to the same subject or sharing a common purpose, the statutes "shall be construed together ('*in pari materia*') in order to advance their common purpose or intent." ***Carver v. Citizen Utils. Co.***, 954 S.W.2d 34, 35 (Tenn. 1997). "Under the generally accepted rules of statutory construction, a special statute, or a special provision of a particular statute, will prevail over a general provision in another statute or a general provision in the same statute." ***Keough v. State***, 356 S.W.3d 366, 371 (Tenn. 2011).

In accordance with the above rules of statutory construction, we first look to the language used in Section 27-5-103 to determine whether it is plain and unambiguous, or whether it is susceptible to more than one interpretation.

**Ambiguity**

Section 27-5-103, quoted in full above, requires a party appealing from General Sessions Court to Circuit Court to "give bond with good security, as hereinafter provided, for the costs of the appeal." Tenn. Code Ann. § 27-5-103(a). The Circuit Court below determined that this provision is plain and unambiguous, and that "the costs of the appeal" means *all* costs that will be incurred in the upcoming litigation, without limitation. Based on the absence of a specified monetary amount for the appeal bond required in Section 27-5-103, the Circuit Court held that statute clearly requires a bond with no monetary limit. The Circuit Court's determination that the plain language of the statute requires an appeal bond for all costs that will be incurred in the ensuing litigation finds support in a very recent case decided by this Court on similar facts, ***Jacob v. Partee***. In that case, the appellate court concluded that the statute "could not be more clear: an appeal bond, which secures *all costs incurred throughout the appeal*, as opposed to an initial filing fee, is required." ***Jacob***, 2012 WL 3249605, at *3 (emphasis added). Although the ***Jacob*** court did not use the word "limitless," its emphasis on the fact that the bond must be for all costs that will be incurred in the case, which cannot be determined at its outset, comports with the holding of the Circuit Court below in this case.

This reasoning has proven to be problematic. The Court's decision in ***Jacob*** was preceded by a 2009 memorandum opinion,[5] ***University Partners Development v. Bliss,*** No. M2008-00020-COA-R3-CV, 2009 WL 112571 (Tenn. Ct. App. Jan. 14, 2009). In ***University Partners,*** although the question was not raised as an issue on appeal, this Court held that the appellant did not perfect his appeal from general sessions court to circuit court because the appellant "admit[ted] that he paid only the 'court costs . . . in advance . . . in lieu of posting an appeal bond.'" ***Id.*** at *3. Without citing or referring to Tennessee Code Annotated § 8-

___

[5]Rule 10 of the Rules of the Court of Appeals of Tennessee provides that a memorandum opinion by this Court is not to be cited or relied upon in an unrelated case.

21-401, the appellate court in *University Partners* held that the appellant had not perfected his appeal under Section 27-5-103. Despite the fact that *University Partners* was a memorandum opinion, some circuit courts began dismissing appeals from general sessions court for the reason articulated in *University Partners*, some citing *University Partners* expressly.[6] In the midst of these dismissed appeals from General Sessions court, this Court issued its opinion in *Jacob,* employing the reasoning set forth in *University Partners* without expressly citing it. We now find ourselves faced with numerous appeals indicating clearly that, instead of giving the lower courts certainty in how to apply the statutes applicable to an appeal from General Sessions to Circuit Court, the holding embodied in both *University Partners* and *Jacob* created uncertainty and unintended consequences.[7] In light of this, a word about the historical doctrine of *stare decisis* is in order.

In *Payne v. Tennessee*, the United States Supreme Court confronted the realization that two of its recent decisions were spawning persistent questions and "defied consistent application by the lower courts." *Payne v. Tennessee,* 501 U.S. 808, 829 (1991). In advocating adherence to the Court's prior decisions, the appellants invoked the doctrine of *stare decisis*. In response, the *Payne* Court explained the proper place of the doctrine of *stare decisis* in judicial decisionmaking and its conclusion that it should reconsider its prior decisions despite the doctrine:

> *Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393,

---

[6]Two years after *University Partners*, in *Carter v. Batts*, this Court rejected the appellants' claim that the case should be dismissed for lack of subject matter jurisdiction when the cost bond was "paid" in an amount certain. *Carter*, 373 S.W.3d at 549. The appellants in *Carter* filed a "Motion for Re-Hearing and/or For Reconsideration" based specifically on *University Partners*, but the appellate court in *Carter* denied the motion. *Carter*, a published decision rejecting the reasoning in *University Partners*, remained the law until *Jacob*. *Jacob*, decided less than a year after *Carter*, cited neither *Carter* nor *University Partners,* but relied on reasoning similar to that in *University Partners* in dismissing the case. In the wake of all of these decisions, any confusion in the trial courts is perhaps unsurprising.

[7]Currently, this Court has the following pending appeals involving issues that are the same or similar to those presented in the case at bar: *West v. Amisub (SFH), Inc.,* No. W2012-00069-COA-R3-CV; *Meacham v. Starnes,* No. W2012-00192-COA-R3-CV; *Brown v. Shtaya*, No. W2012-00875-COA-R3-CV; and *Andrews v. Clemmer*, No. W2012-00986-COA-R3-CV. We appreciate the parties' thorough arguments and the opinions of the learned trial judges in each of those cases; this Court will issue separate opinions in each of those appeals.

406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." *Smith v. Allright*, 321 U.S. 649, 665, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944). *Stare decisis* is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940).

501 U.S. at 827-28 (some internal citations omitted); *see also* William C. Koch, Jr., *Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution*, 27 U. of Memphis L. Rev. 333, 348 (1997) ("The doctrine of *stare decisis* is neither an inexorable command nor an inflexible, mechanical formula."). In the case at bar, we find that our prior decision in *Jacob* did not have the effect of "settling" the law, but instead embodies a statutory construction that has proven to be "unworkable" and "badly reasoned." *Payne*, 501 U.S. at 828. "As valuable as prior judicial constructions . . . are, they should not be used to perpetuate error. . . ." *See* Koch, Jr., *Reopening Tennessee's Open Courts Clause*, 27 U. of Memphis L. Rev., at 347. Under these circumstances, we are compelled to consider whether this Court's holdings in *Jacob* were erroneous.

In revisiting the threshold question of whether Section 27-5-103 is ambiguous, we must conclude that the statutory language is not as clear as was perceived in *Jacob*. We note that the statute does not say "all costs that will be incurred in the ensuing litigation," but that it instead refers to "the costs of the appeal." As observed by Judge Stafford in his concurrence, " the 'costs of the appeal' may refer to the costs of the entire appeal taxed at the conclusion of the litigation, as was decided in the *Jacob* case, *or* it may simply refer to a 'fee' charged by the court to commence litigation." (Emphasis in original). Moreover, Section 27-5-103(a) describes the bond with the modifying phrase "as hereinafter provided," indicating that the legislature or its designee will provide further definition to the bond required under the statute. The phrase "as hereinafter provided" could be a reference to giving further definition regarding any number of factors, such as the type of security given, the amount of the bond, whether the "cost" is a designated cost for commencing or initiating the appeal or for all of the costs that will ever be incurred in the case, or some other factor entirely. Section 27-5-103(b), addressed below in detail, was enacted 192 years after subsection (a) of the statute, and it gives little further definition to the required bond; it merely reiterates that the bond is only for "the cost of the cause on appeal" regardless of whether the appellant is the original plaintiff or the defendant. This leaves questions that cannot be answered simply by examining the bare language of the statute, and it leaves open the possibility that the legislature intended to give the necessary definition to the bond in another statute or in some other fashion.

Consequently, from looking at the language of the entire statute, we must hold that Section 27-5-103 lacks precision and is fairly susceptible to more than one interpretation and, thus, is ambiguous. Therefore, we apply the familiar rules of statutory construction to interpret it.

**Bond in a Limited Amount**

Once it is determined that a statute is ambiguous, we look to the entire statutory scheme and other reliable guides to ascertain the legislature's intent and purpose in enacting the statute. *Powers v. State*, 343 S.W.3d 36, 50 (Tenn. 2011); *Eastman Chem. Co.*, 151 S.W.3d at 507. "Some 'reliable guides' include the statute's historical background, the conditions giving rise to the statute, circumstances contemporaneous with the statute's enactment, and the statute's legislative history." *Robinson v. Fulliton*, 140 S.W.3d 312, 321 (Tenn. Ct. App. 2003) (citing *BellSouth Telecomms.*, 972 S.W.2d at 673).

We also consider the application of the statute by Tennessee courts, as well as legislative inaction in the face of the courts' application. "'The legislature is presumed to know the interpretation which courts make of its enactments,' and 'the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.'" *Deselm v. Tenn. Peace Officers Standards and Training Comm'n*, No. M2009-01525-COA-R3-CV, 2010 WL 3959627, at *28 (Tenn. Ct. App. Oct. 8, 2010) (quoting *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977) (citing cases)). With these guides in mind, we seek to ascertain the legislative intent with respect to Section 27-5-103.

Section 27-5-103 was originally enacted in 1794, prior to the adoption of the current Tennessee Code. The statute was enforced and remained unchanged for almost 200 years. As originally enacted, the statute included only the language in subsection (a), with one difference. It provided that an appellant from General Sessions Court "shall give bond with good security, as hereinafter provided, for the *prosecution of the appeal*." *See Patterson*, 1988 WL 138202, at *1 (quoting former version of statute, emphasis added). Because the statute was enacted in 1794, recorded legislative history regarding the statute does not exist.

In 1988, Section 27-5-103 was amended for the first and only time. The audio recordings of the legislative debates over this amendment have been provided to this Court for our review.[8] The issue of whether the appeal bond for an appeal from General Sessions Court may be for a limited amount was not directly addressed by either the content of the

_____

[8]The audio recordings were provided to us by the Legislative History Department of the Tennessee State Library and Archives in Nashville, Tennessee.

amendment or the legislators' debate on it. Nevertheless, the legislative debate is illuminating.

As background for discussion of the amendment, it is necessary to consider an opinion issued by this Court, ***Maddock, Kenny & Associates, Inc. v. Management Assistance and Service, Inc.***, 1986 WL 8811 (Tenn. Ct. App. Aug. 14, 1986). In ***Maddock***, a Tennessee corporation sued the defendant corporation in General Sessions Court for money owed for services rendered. The General Sessions Court entered a default judgment in the amount of $9,777.67 in favor of the plaintiff. The defendant perfected its appeal to the Circuit Court "by filing an appeal bond in the penal sum of $250." The plaintiff filed a motion to dismiss the appeal based on the appeal bond, arguing that the bond was insufficient because it was not executed by an authorized officer of the corporation, it did not include a surety, and it was not for the full amount of the judgment rendered. ***Maddock***, 1986 WL 8811, at *1. The Circuit Court determined that the bond was not properly executed by a surety, but it allowed the defendant ten days to cure that defect. Other than that, the Circuit Court held "that a bond in the sum of $250 [for costs] was adequate." ***Id.*** Within ten days, the defendant deposited a cash bond of $250 with the Circuit Court. The plaintiff filed a second motion to dismiss, insisting that the amount of the appeal bond had to cover the amount of the General Sessions Court judgment. The Circuit Court held that the defendant's "posting of a cash deposit of $250 constituted substantial compliance with the court's previous order," and it declined to require the defendant to file an appeal bond in the amount of the judgment. ***Id.*** The plaintiff was then granted permission for an interlocutory appeal of that decision.

In ***Maddock***, the appellate court defined the issue on appeal as "whether defendant is required to make bond for the amount of the judgment and costs in order to perfect its appeal to the circuit court . . . ." ***Id.*** After reviewing the statutory scheme, it held that "an appealing plaintiff as opposed to an appealing defendant . . . has different requirements." ***Id.*** The appellate court then defined those requirements: "In the case of an appealing plaintiff, the appeal bond, 'with good security,' must be in the *minimum amount of $250 for costs*." ***Id.*** at *2 (emphasis added). For defendants, the appellate court held, the appeal bond must in the "minimum amount of $250 [for costs]" plus the amount of the judgment and damages. ***Id.*** Though the appellate court deemed the $250 cash bond deposited by the defendant to be deficient for failure to include the amount of the judgment, the appellate court did not dismiss the case. Rather, it determined that dismissal of the action was "too drastic" a remedy, and so it remanded the case to the trial court to give the defendant an opportunity "to file a sufficient appeal bond in accordance with the principles laid down in this opinion." ***Id*** at *3.

The ***Maddock*** decision prompted swift action by Tennessee's General Assembly to legislatively overrule what they viewed as a misinterpretation of Section 27-5-103. ***See Patterson***, 1988 WL 138202, at *1 (discussing the purpose of the 1988 amendment). To

-11-

correct this, the legislature amended subsection (a) of the statute to replace the phrase "prosecution of the appeal" with the "costs of the appeal." It also added subsection (b) to Section 27-5-103, providing that the "appeal bond filed *by a plaintiff or defendant* . . . shall be considered sufficient if it secures the cost of the appeal." **Id.** (emphasis added). Based on this amendment, "[a]n appeal bond sufficient to secure the costs of the cause only is all that the statute . . . requires." **Id.** at *2.

The audio recordings of the legislative debates on the 1988 amendment to Section 27-5-103 are instructive in several respects. First, several of the legislators who participated in the debate, attorneys by trade, specifically mentioned the **Maddock** case as the trigger for the 1988 amendment and indicated substantial familiarity with the decision. **See id.** at *1 (noting that the 1988 amendment was intended to overrule **Maddock**). While there is vigorous discussion by the legislators of the pros and cons of the holding in **Maddock,** none expressed disagreement with the Court's clear holding that a $250 appeal bond was sufficient for a plaintiff's appeal from General Sessions Court. Instead, the debate focused only on whether a defendant against whom a General Sessions Court judgment was rendered should be required to file an appeal bond that included the amount of the judgment *in addition to* the $250 bond for costs. The substance of the 1988 amendment does not expressly address whether the appeal bond should be for a specific amount or for an unlimited amount; it states only that the appeal bond "shall be considered sufficient if it secures the costs of the cause on appeal," stated in **Maddock** to be $250.[9] However, neither the amendment nor the legislative debate over the amendment indicate any intent to disturb the **Maddock** Court's holding that an appeal bond for costs in "the minimum amount of $250" was sufficient under the statute to secure "the costs of the appeal." This is important to our interpretation of Section 27-5-103 because, as we have noted, "[t]he legislature is presumed to know the interpretation which courts make of its enactments," and legislative inaction "is persuasive evidence of legislative adoption of the judicial construction." **DeSelm**, 2010 WL 3959627, at *28 (quoting **Hamby**, 559 S.W.2d at 776 (citing cases)).

Another part of the legislative debate on the amendment to Section 27-5-103 is valuable to our analysis as well. In debating the wisdom of requiring appealing defendants to file an appeal bond that covered the amount of the judgment rendered against it, the members of the General Assembly discussed how its decision would affect the "working poor," described as a "lower-income working person" with just enough assets so as not to qualify as a pauper for purposes of filing the appeal on a pauper's oath. In the legislative debate, Tennessee State Senator William S. Owen posed a hypothetical in which such a person of limited means has a "legitimate disagreement over a bill" with a plaintiff who hires a lawyer and obtains a General Sessions Court judgment against him. In such a circumstance, Senator Owen

---

[9]We have not been able to determine how the $250 amount was set.

-12-

argued, the "lower income" defendant cannot "risk losing all that he has" by putting up an appeal bond that includes the amount of the judgment. Arguing in favor of the amendment to legislatively overrule *Maddock,* Senator Owen said that such persons of limited income should be able to appeal a General Sessions Court judgment to Circuit Court and have their "day in court without risking everything they own in the appeal process."

This portion of the legislative debate over the amendment to Section 27-5-103 is important because of the practical effect of requiring an appeal bond from General Sessions Court to Circuit Court in an unlimited monetary amount. We are required to interpret statutes in a manner that makes "practical sense." *Powell v. Cmty. Health Sys., Inc.,* 312 S.W.3d 496, 508 (Tenn. 2010) (quoting *N.C. & St. L. Ry. v. Carroll County*, 12 Tenn. App. 380, 386 (1930)). We are also obligated to interpret the statute in a way that does not conflict with our Constitution. *See State v Burkhart,* 58 S.W.3d 694, 697-98 (Tenn. 2001) (holding that courts have a duty to construe a statute to avoid constitutional conflict); *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993) (holding that the courts should adopt the plausible construction that avoids undermining the statute's constitutionality). As noted by the Circuit Court below in this case, if the appeal bond from the General Sessions Court must cover the entire unknown costs that will be incurred in the upcoming Circuit Court litigation, "a bond that sets forth a specific dollar amount (be it $250.00, $1,000.00, or any amount whatsoever) would be considered non-compliant." Thus, to file an appeal from General Sessions Court to Circuit Court, a litigant of modest means who does not have an attorney willing to sign an appeal bond for an unlimited amount,[10] or one who is self-represented, is faced with either paying a corporate bonding company a substantial fee for a bond in an unlimited amount, if indeed securing such a corporate bond is possible, or foregoing the appeal altogether. If a court gave a criminal defendant a bond in an unlimited amount, it could be persuasively argued that such a ruling was the equivalent of denying bond to the defendant. In the same sense, interpreting Section 27-5-103 to require a bond in an unlimited amount has the effect of granting a General Sessions litigant the right to appeal to Circuit Court with one hand and taking it away with the other. Such a result does not make "practical sense." *Powell,* 312 S.W.3d at 508. As suggested by Judge Farmer is his well-reasoned concurrence, if requiring an appeal bond in an unlimited amount has the practical effect of depriving litigants of their right to appeal a General Sessions judgment, then such an interpretation may be at odds with the constitutional right of access to the courts. *See* Koch, Jr., *Reopening Tennessee's Open Courts Clause*, 27 U. of Memphis L. Rev., at 430 (discussing whether financial barriers to judicial remedies violate Tenn. Const.

---

[10]Even appellants who have the means to hire an attorney may be hard-pressed to find an attorney willing to execute an appeal bond for an unlimited amount. Counsel for the Bernatskys expressed reluctance to do so. He commented at oral argument that, by signing as a surety on his client's unlimited appeal bond, "I could lose my house."

Art. I, § 17). As noted above, we are admonished to construe Section 27-5-103 in a way that avoids undermining the constitutionality of the statute. ***Davis-Kidd,*** 866 S.W.2d at 529-30.

Numerous cases since the enactment of the amendment to Section 27-5-103 have referenced an appeal bond from General Sessions Court to Circuit Court in an amount certain. ***Patterson v Carr*** was decided in the wake of the amendment to Section 27-5-103. The ***Patterson*** opinion discusses the fact that the amendment was intended to overrule the holding in ***Maddock.*** The appellate court refers to the holding in ***Maddock*** that an appeal bond for an appeal from General Sessions "should be in the minimum amount of $250 for costs," and it concludes that "[a]n appeal bond sufficient to secure the costs of the cause only is all that the statute now requires." ***See Patterson***, 1988 WL 138202, at *1-2.

In ***City of Red Boiling Springs v. Whitley***, an unsuccessful defendant filed a notice of appeal in the General Sessions Court and filed an appeal bond for $250 in the Circuit Court within ten days of the General Sessions judgment against him. The appeal bond was executed by the defendant and not by a surety. ***City of Red Boiling Springs***, 777 S.W.2d at 707. In that case, the appellate court held that the defendant did not properly perfect his appeal to the Circuit Court, because the appeal bond was filed in the wrong court and did not contain a surety. The Court held that the appeal-bond requirement "is not a formality," and that "the bond in some form must be tendered and accepted by [the General Sessions Court] within the time provided by statute." ***Id.*** at 708 (quoting ***Hoback Motor Co. v. Kyle***, 10 Tenn. App. 306, 309 (1929)). Notably, although the bond was deemed deficient for lack of a surety and the failure to file it in the proper court, the appellate court did not take issue with the fact that the bond was in an amount certain, namely, $250.

Subsequent cases decided by this Court have expressly involved a Section 27-5-103 appeal bond in an amount certain. In ***Tejwani v. Trammell,*** No. 02A01-9103CV00036, 1991 WL 136224 (Tenn. Ct. App. July 26, 1991), the plaintiff obtained a judgment against the defendant in General Sessions Court, and the defendant filed a notice of appeal and an appeal bond to appeal the case to Circuit Court. ***Id.*** at *1. The plaintiff sought to have the appeal to Circuit Court dismissed because the bond was not properly executed. The Circuit Court dismissed the appeal from General Sessions Court, and the defendant appealed to this Court. ***Id.*** On appeal, this Court noted that "the question of construction of the bond is a question of law," reviewed *de novo*. ***Id.*** at *2. As an exhibit to the opinion, the appellate court attached a copy of the bond itself, which stated plainly that it was "in the penal sum of Two Hundred Fifty Dollars ($250.00) Dollars." ***Id.*** at *3. The appellate court held that the Circuit Court should have permitted the defendant to amend the bond as to its execution and concluded: "We are of the opinion that the appeal bond filed in general sessions court is a valid appeal bond made in accordance with T.C.A. § 27-5-103 and that the trial court was in error in dismissing the appeal." ***Id.***

Similarly, in ***Brady v. Valentine,*** the plaintiff sued the defendant in General Sessions Court to collect on a promissory note. ***See Brady v. Valentine,*** No. 01-A-019707CV00308, 1998 WL 83746, at *1 (Tenn. Ct. App. Feb. 27, 1998). After the General Sessions Court dismissed the claim, the plaintiff filed an appeal to the Circuit Court "by executing a $250 cost bond." ***Id.*** Asserting that the plaintiff's claim was frivolous, the defendant sought sanctions under Rule 11 of the Tennessee Rules of Civil Procedure. ***Id.*** The Circuit Court held that the bond was not sufficient basis for an award of Rule 11 sanctions, and the defendant appealed to this Court. On appeal, the appellate court explained:

> Chapter 5 of Title 27 of the Tennessee Code prescribes the procedure for appealing an adverse judgment in the general sessions court to the circuit court. The most important step is the giving of a bond for the prosecution of the appeal. Tenn. Code Ann. § 27-5-103. When the appeal is perfected, it is the duty of the clerk of general sessions court to file the papers in the office of the clerk of the circuit court, Tenn. Code Ann. § 27-5-105, where the appeal shall be heard *de novo*. Tenn. Code Ann. § 27-5-108.
>
> We think that the appeal procedure brings the appellant within [t]he express provisions of Rule 11.02. By perfecting the appeal — which obligates the clerk to forward the papers to the circuit court — the appellant has "presented" to the court all the papers that accompany that filing. The presentation carries with it the certification described in Rule 11.02(1)-(4). The papers filed in the circuit court included the civil warrant filed in the general sessions court and the cost bond executed to perfect the appeal. If the appeal was taken for an improper purpose, it would, in our judgment, be a violation of Rule 11.

***Id.*** at *2. The ***Brady*** Court concluded that the plaintiff had, in fact, perfected his appeal from General Sessions Court by filing the "$250 cost bond," and so it remanded the case to the Circuit Court for reconsideration of the defendant's request for Rule 11 sanctions. ***Id***; ***see Love v. College Level Assessment Servs., Inc.***, 928 S.W.2d 36, 38-39 (Tenn. 1995) (referring to an appeal bond from General Sessions Court in an amount "not to exceed" $500); ***Steve Frost Agency v. Spurlock,*** 859 S.W.2d 337, 338 (Tenn. Ct. App. 1993) (referring to $250 bond for appeal from General Sessions Court to Circuit Court); ***Shelton Dental Assocs. v. LaFevre***, 767 S.W.2d 665, 668 (Tenn. Ct. App. 1989) (permitting the appeal bond from General Sessions Court to be reformed to the amount of $500, reduced from an amount that included the entire judgment); ***see also McDevitt v. Sunshine Waterbeds, Inc.***, No. 03A01-9203-CV-90, 1992 WL 137471, at *1 (Tenn. Ct. App. June 19, 1992) (finding that a cash bond in the amount of $500 by a non-attorney defendant was permissible).

Finally, a recent decision by this Court, **Carter v. Batts**, involved a Section 27-5-103 appeal bond from General Sessions Court to Circuit Court. While the appellate court in **Carter** did not state the amount of the appeal bond that was given, the bond was given in the form of a check proffered to the General Sessions Court clerk, which we may surmise had to be in an amount certain. **Carter**, 373 S.W.3d at 549. Under the circumstances of that case, involving payment of the appeal bond in the form of a check, the **Carter** Court ultimately concluded that the requirements of Section 27-5-103 had been met, and that the appeal from General Sessions had been perfected. **Id.** at 551.

Our extensive research has uncovered no Tennessee case in the over 200 years following the enactment of the original version of Section 27-5-103 that has interpreted the statute to require an appeal bond in an unlimited monetary amount, or that has even referenced the filing of an appeal bond from General Sessions Court (or its predecessor, Justice of the Peace courts) in an unlimited amount, until our decisions in **University Partners** and **Jacob v. Partee.**[11] Particularly in view of the legislature's swift action to legislatively overrule the interpretation of the statute by the **Maddock** Court, we take the legislative *inaction,* in the face of the courts' long history of approving appeal bonds in amounts certain, as acquiescence in the courts' interpretation and application of the appeal-bond requirement. **Lee Medical, Inc. v. Beecher,** 312 S.W.3d 515, 527 (Tenn. 2010) ("The courts may likewise presume that the General Assembly is aware of the manner in which the courts have construed the statutes it has enacted." (citations omitted)); **see also** 73 Am. Jur. 2d *Statutes* § 212 ("Since it is presumed that the legislature knew a construction, long acquiesced in, given by the courts to a statute," if the statute "is substantially reenacted, the legislature may be regarded as adopting such construction."). Furthermore, we consider whether interpreting the statute to require an appeal bond in an unlimited amount makes "practical sense," and we observe that the burdens attendant to securing a bond with no monetary limit would have the effect of precluding some litigants from exercising their statutory right to a *de novo* appeal of the General Sessions Court judgment to Circuit Court. **Powell,** 312 S.W.3d at 508. In our review of the statutes and rules governing the bonds required to file an original action in Tennessee, or any other type of appeal, we have found none that requires an open-ended bond with no monetary limitation whatsoever. It would be anomalous indeed for the legislature to choose to impose a particularly onerous bond requirement on those who seek to appeal judgments of the General Sessions Courts, described by our Supreme Court as "the courts that 'touch elbows' with the ordinary people and provide 'justice in the small everyday affairs of life.' " **Ware v. Meharry Med. College,** 898 S.W.2d 181, 183 (Tenn. 1995) (quoting Robert S. Keebler, *Our Justice of the Peace Courts — A Problem in Justice*, 9 Tenn. L. Rev. 1, 4-5 (1930)). We must conclude that requiring a bond in an unlimited monetary

---

[11]As we have stated, **University Partners** was designated as a memorandum opinion. **See University Partners**, 2009 WL 112571, at *1.

amount for an appeal from General Sessions Court to Circuit Court is inconsistent with the legislative intent regarding Section 27-5-103, does not make "practical sense," and undermines the constitutionality of the statute.

For these reasons, we hold that the appeal bond for which Section 27-5-103 provides is a bond in an amount certain, with the amount to be determined "as hereinafter provided" by our legislature or its designee. Tenn. Code Ann. § 27-5-103(a).

### Cash Bond

The Bernatskys also appeal the Circuit Court's holding that payment of cash did not satisfy the requirement under Section 27-5-103 that "the person appealing shall give *bond with good security.*" Tenn. Code Ann. § 27-5-103(a) (emphasis added). The Circuit Court explained that this finding was based on its primary holding, that an appeal bond under Section 27-5-103 must secure all of the costs that will accrue in the ensuing litigation in Circuit Court. It reasoned that, because the amount of such costs cannot be determined at the time the appeal is filed, *ergo*, the payment of cash, in any amount, will not suffice.

The Bernatskys argue that their payment of $211.50 to the General Sessions Court clerk's office constitutes a cash bond, as opposed to a surety bond, and that it has always been an entirely acceptable way to "give bond with good security" under Section 27-5-103. They point out that the money is paid to the General Sessions Court clerk at the time the appeal is filed, and then the clerk transfers the funds (less a commission) to the Circuit Court clerk's office. The Circuit Court clerk takes the funds as security for the payment of costs at the end of the litigation, when the trial judge charges one of the litigants with the responsibility for paying the costs in the matter. In this way, the Bernatskys contend, they have provided the best possible security for the costs, because the costs can be paid from the cash deposited with the clerk's office. Although a surety bond is sufficient also, they claim, it is not the only way to "give bond with good security." Permitting litigants to file cash bonds, they argue, has been the accepted procedure from time immemorial, and nothing in Section 27-5-103 precludes this type of bond.

In a case decided in 1871, the Tennessee Supreme Court opined that "[t]he sole object of the appeal bond is to secure the successful party in his . . . costs . . . ." *McCarver v. Jenkins*, 49 Tenn. 629, 633 (2 Heisk. 1871). This Court has noted that Black's Law Dictionary defines the term "appeal bond" as: "A bond that an appellate court may require from an appellant in a civil case to ensure payment of the costs of appeal . . . ." Black's Law Dictionary 200 (9th ed.), *quoted in Jacob*, 2012 WL 3249605, at *3. In general, such a bond may be either a cash bond or a surety bond. One court has explained the difference between the two types of bond in the context of criminal cases:

A cash bond is just what it says — the defendant puts up a sufficient amount of cash that the court believes will assure his or her appearance at future court hearings. If the defendant does not appear, the cash bond is forfeited. The surety bond is similar, but it involves a third party: the surety. Instead of posting the defendant's cash, the surety posts the bond as a promise to pay the bond amount in the event of default. The bond is based upon some financial arrangement between the surety and the defendant or the defendant's friends and family — often that entails the payment to the surety of some percentage of the total bond amount and the posting of some financial security with the surety. If the defendant does not appear, the surety bond is forfeited, and it must be paid by the surety, who is then free to collect reimbursement from the defendant.

*State v. Thammavong*, No. 97,278, 2008 WL 762507, *1 (Kan. Ct. App. Mar. 21, 2008). Thus, for a cash bond, the security is cash paid to the clerk's office, subject to forfeiture for the payment of costs at the end of the litigation.[12] In contrast, for a surety bond, the security is the surety's *promise to pay*.

In light of our holding that the bond for an appeal from General Sessions Court under Section 27-5-103 may be in an amount certain, we have little difficulty concluding that the statutory requirement of a "bond with good security" as stated in Section 27-5-103 may be satisfied by either a cash bond or a surety bond. Indeed, this Court has explicitly recognized that "cash on the barrelhead" is the highest and best form of security. In **Parrish v. Yeiser**, the Court held that depositing $250 in cash with the clerk of the trial court as the bond for an appeal to the Court of Appeals was "the equivalent of filing a solvent appeal bond in the amount of $250." **Parrish v. Yeiser**, 298 S.W.2d 556, 559 (Tenn. Ct. App. 1955). The appellate court explained:

We are cited to no case holding that a plaintiff-in-error may not put up cash in lieu of an appeal bond. It appears to us that the purpose of the usual appeal bond is to guarantee payment of the costs in case the plaintiff-in-error is cast on his appeal. *Obviously the costs of a cause could be collected out of cash on deposit with the Clerk easier than by judgment and levy of execution against an appellant and his sureties.* None of the statutes exclude the deposit of cash in lieu of an appeal bond and we hold that the deposit of cash in the amount of

---

[12]Thus, while a "filing fee" and a "cash bond" are both taken by the court clerk at the start of a case, the filing fee is simply taken by the court clerk for its own coffers, but a cash bond is taken by the clerk to assure payment of the court costs at the end of the litigation. **See Jacob**, 2012 WL 3249605, at *3 (discussing the difference between the definitions of an "appeal bond" and a "filing fee").

> $250 with the clerk by the plaintiff-in-error is the equivalent of filing a solvent appeal bond in the amount of $250.

*Id.* (emphasis added).

Consistent with this conclusion, this Court has recently approved of the payment of a cash appeal bond under Section 27-5-103. In *Carter v. Batts*, the plaintiffs sued the defendant in General Sessions Court, and a judgment was entered against the defendant. On the day after the judgment was entered, the defendant's insurance carrier submitted a check to the General Sessions Court clerk "for the appeal bond." Due to a misunderstanding, the insurance company stopped payment on the check. Before it received notice of the stop-payment order, the General Sessions Court clerk advanced the money to the Circuit Court clerk's office.[13] The Circuit Court clerk's office was never notified that the General Sessions Court clerk had not been paid. *Carter*, 373 S.W.3d at 549. Much later, after a trial had been conducted in the Circuit Court, the plaintiff argued that the appeal to Circuit Court was never perfected for want of a proper appeal bond, and that all of the proceedings before the Circuit Court were void for want of subject-matter jurisdiction. The Circuit Court agreed and dismissed the case. On appeal, the appellate court held that the payment of the cash appeal bond was sufficient to "give bond with good security" pursuant to Section 27-5-103, and that the appeal from General Sessions Court was properly perfected. The appellate court clarified that, despite the misunderstanding about the check in the clerks' offices, the appeal from General Sessions Court was perfected because the General Sessions Court clerk's office "paid the appeal bond to the circuit court clerk's office." *Id.* at 551; *see also McDevitt*, 1992 WL 137471, at *1 (holding that paying a cash bond of $500 to appeal from General Sessions Court to Circuit Court may be done by a non-attorney).

We note also this Court's decision in *Maddock*, the case that prompted the legislature to enact the 1988 amendment to Section 27-5-103. In *Maddock*, the Circuit Court had approved of a cash bond of $250, because the payment of a cash bond would obviate the need for a surety. The appellate court held that the cash bond was insufficient *only* because it did not cover the amount of the judgment rendered against the defendant; the appellate court did not quibble with the fact that the defendant posted a "cash bond" as opposed to a surety bond. *Maddock*, 1986 WL 8811, at *1-2.

---

[13]The insurance company actually submitted a second check after it stopped payment on the first check, but the clerk's office returned it to the insurance company not knowing that payment on the first check had been stopped. *See Carter*, 373 S.W.3d at 549.

Therefore, we conclude that the Section 27-5-103 requirement to "give bond with good security" to perfect an appeal from General Sessions Court may be satisfied by either a cash bond or a surety bond.[14]

## Construing T.C.A. § 8-21-401 and T.C.A. § 27-5-503 Together

The Bernatskys also argue on appeal that the amount of the bond for an appeal from General Sessions Court was established by the legislature in Tennessee Code Annotated § 8-21-401, and that, therefore, payment of the amount set out in Section 8-21-401 satisfies the requirement in Section 27-5-103 to give a bond to secure "the costs of the appeal." The Bernatskys paid a $211.50 cash bond, and they insist that this meets the minimum to perfect their appeal from General Sessions Court to Circuit Court.

As we have indicated, this issue was directly addressed in *Jacob v. Partee*; however, the Court's reasoning on that issue was premised on its holding that the bond under Section 27-5-103 must be in an unlimited amount to cover all costs that may be incurred in the ensuing Circuit Court litigation. *Jacob*, 2012 WL 3249605, at *3. As set forth above, this premise is no longer valid, so we find that we must revisit the *Jacob* Court's holding on Section 8-21-401 as well.

As noted in *Jacob,* Section 8-21-401 was amended substantially in 2005. *Jacob*, 2012 WL 3249605, at *3. Prior to this amendment, Section 8-21-401, entitled "Schedule of Fees," contained a detailed laundry list of specific costs for various services, pages and pages of items too numerous to list in this opinion. For example, the statute listed the individual fees for issuing all different types of summonses; filing bonds, bills, complaints, exhibits, affidavits, and the like; entering of orders, bonds, bills complaints, motions, and other such items; and amounts for the clerk's commissions on a variety of services rendered. Tenn. Code Ann. § 8-21-401 (2004). Each service carried with it an attendant fee. This was the statutory basis for the assessment of court costs, and as more and more individualized costs were added to the lengthy list, the system became overly complicated and ultimately unmanageable.

In 2004, the Tennessee Judicial Council,[15] at the behest of Tennessee's General Assembly, set about to "examine court costs and fees in all Tennessee Courts and [to] make

---

[14]This conclusion at this stage of our analysis does not take into account additional requirements imposed by Tennessee Code Annotated § 8-21-401, discussed *infra.*

[15]The Tennessee Judicial Council, comprised of judges, legislators, and practicing attorneys, was formed to study and survey Tennessee's judicial system and recommend improvements.

recommendations . . . regarding uniformity, simplification and appropriateness of fees" in the court system. *Jacob*, 2012 WL 3249605, at *3 (quoting 2005 Pub. Acts c. 429). As a result of the Judicial Council's study and recommendation, in 2005, Tennessee's legislature "amended"Section 8-21-401 by replacing it with an entirely new Section 8-21-401. As revised in 2005, Section 8-21-401(b)(1)(C)(i) specifies $150 as the "standard court cost" for filing an appeal from General Sessions Court to Circuit Court:

> (C) In the following specific types of civil actions, the clerk shall charge a standard court cost of one hundred fifty dollars ($150) at the institution of a case:
> > (i) Appeals to the circuit . . . court from . . . general sessions court . . . .

Tenn. Code Ann. § 8-21-401(b)(1)(C)(i). Other amounts such as litigation taxes are added to the stated standard court cost of $150, for a total amount of $211.50. After the enactment of the amendment to Section 8-21-401, the Shelby County General Sessions Court clerk's office began to accept payment of the $211.50 as inclusive of the standard court cost required for an appeal from General Sessions Court.

The Bernatskys argue that the General Sessions Court's clerk's practice, accepting payment of the $211.50 as satisfying the Section 27-5-103 requirement for an appeal bond, comports with the legislative intent behind the 2005 amendment to Section 8-21-401. The Bernatskys contend that the legislature intended for Section 8-21-401, as amended, to allow a party to perfect an appeal from General Sessions Court to the Circuit Court by paying the $211.50 as "standard court cost" in order to secure "the costs of the appeal" under Section 27-5-103. After reviewing the language of Section 8-21-401 and its legislative history, we agree.

We first review the pertinent language in the statute. Section 8-21-401, as amended, remains under Part 4 "Clerks of Court" and retains the heading "Schedule of fees." The subsection at issue, subsection (b), has the subheading "Fees in civil cases in circuit and chancery court." In *Jacob*, the Court emphasized that a "fee" and a "bond" are not synonymous, and on that basis reasoned that the amounts set forth in Section 8-21-401 could only be a fee that was separate from and in addition to the appeal bond required under Section 27-5-103.

Upon reflection, we must conclude that this reasoning in *Jacob* is spurious. It is true, of course, that a fee is not the same thing as a bond. The term "fee" has been defined as a "charge fixed by law for services of public officers . . . ." Black's Law Dictionary 553 (5th ed. 1979). The term "bond," and specifically an "appeal bond," is defined as a "bond that an appellate court may require from an appellant in a civil case to ensure payment of the costs of appeal." *Jacob*, 2012 WL 3249605, at *3 (quoting Black's Law Dictionary [page cite

-21-

omitted in original] (9th ed. 2009)).  Of course, the term "court costs" is defined as "[t]he charges or *fees* taxed by the court . . . ." Black's Law Dictionary 398 (9th ed. 2009) (emphasis added).  Thus, because court costs are comprised of fees, and the bond is intended to secure the court costs, the distinction drawn by the ***Jacob*** Court between the term "fees" and the term "bond" does not get us anywhere.

Moreover, the term "fees" appears only in the headings and subheadings to the statute;  the term "fees" does not appear in the language in Section 8-21-401 that we are charged with interpreting.  In its analysis, the ***Jacob*** Court fixates on the headings and subheadings and disregards the operative language in Section 8-21-401.[16]   This is inconsistent with settled principles of statutory construction:

> When the legislature enacts an official title or heading to accompany a statutory provision, that title or heading is only a short-hand reference to the general subject matter involved in that statutory section and cannot limit the plain meaning of the text.  In interpreting a statute, a subchapter heading *cannot substitute for the operative text of the statute*. . . .[S]tatutory titles and section headings are tools available for the resolution of doubt about the meaning of a statute.  Section and subchapter titles cannot alter the plain the meaning of a statute; they can only assist in clarifying ambiguity.

73 Am.Jur. 2d *Statutes* § 100 (emphasis added; footnotes omitted).  By Tennessee statute, the headings of statutes are considered not part of the statute itself, but are to be used only to assist in ascertaining the legislative intent and purpose behind the statute.  Tenn. Code Ann. § 1-3-109; ***In re Estate of Davis***, 308 S.W.3d 832, 839 (Tenn. 2010).  Even where the headings are enacted as part of the underlying legislation, they serve only "as an aid to the legislative intent."  2A Norman J. Singer, *Sutherland's Statutory Construction* § 47:14 (6th ed. 2000) (cited in ***In re Estate of Davis***, 308 S.W.3d at 839).

Therefore, rather than engaging in a comparison of the terms "fee" and "bond," we focus on the operative  statutory language and consider the phrase "standard court cost" in Section 8-21-401(b)(1)(C)(i) along with the phrase "costs of the appeal" in Section 27-5-103(a).  With this clarification in mind, we look further at the language of Section 8-21-401.

---

[16]The way the issue on appeal is framed in  ***Jacob*** leads to this misdirection in the analysis; the ***Jacob*** Court "summarizes" the issue on appeal as "[w]hether a party appealing from a General Sessions Court judgment, who pays the appeal *filing fee,* must also file an appeal bond." ***Jacob,*** 2012 WL 3249605, at *1-2 (emphasis added).

Section 8-21-401 sets the amount of the "standard court cost" to be charged by the court clerk "at the institution of a case" in a host of enumerated types of judicial proceedings. Tenn. Code Ann. § 8-21-401(b)(1)(C). Among the types of judicial proceedings are "[a]ppeals to the circuit . . . court from . . . general sessions court." *Id.* at § 8-21-401(b)(1)(C)(i). For an appeal from General Sessions to Circuit Court, the "institution of [the] case" can only be the commencing or instituting of the appeal from General Sessions Court. Thus, both Section 27-5-103 and Section 8-21-401(b)(1)(C)(i) relate to the same subject matter, namely, the commencement of an appeal from General Sessions court to Circuit court. Consequently, both statutes "shall be construed together ('*in pari materia*') in order to advance their common purpose or intent." *Carver*, 954 S.W.2d at 35. We find that, reading these two statutes together to advance their common purpose, the most reasonable construction is that Section 8-21-401(b)(1)(C)(i) was intended by the legislature to dovetail with Section 27-5-103, to supply the amount of "the costs of the appeal" that are to be secured by the statutory appeal bond.[17] Section 8-21-401 does not direct the court clerks to perform additional services, nor does it contain any other indication that the "standard court cost" set forth in the statute is intended by the legislature to be a further monetary burden on citizens who wish to appeal a General Sessions Court judgment to Circuit Court, in addition to the costs that are the subject of the Section 27-5-103 appeal bond. To the contrary, the structure of the statute, the fact that it largely eschews listing fees for specific services performed by the clerk's offices as was done in the prior version of the statute, as well as the use of the term "*standard* court cost," suggest a standardizing of the total court costs that the clerk's offices will be permitted to charge. Section 8-21-401(b)(1)(C)(i), then, can fairly be read to provide the further definition for the appeal-bond requirement referenced in the phrase "as hereinafter provided" in Section 27-5-103(a). *See* Tenn. Code Ann. § 27-5-103(a) ("shall give bond with good security, *as hereinafter provided,* for the costs of the appeal" (emphasis added)). Because Section 8-21-401(b)(1)(C)(i) does not expressly reference Section 27-5-103, however, we consult the legislative history of the statute to determine whether this reading of Section 8-21-401(b)(1)(C)(i) comports with the legislature's intent.[18]

In researching and drafting Section 8-21-401, the Judicial Council worked with court clerk's offices across the state for all of the various courts, such as Circuit Court, Chancery Court,

---

[17]Under Tennessee Code Annotated § 20-12-101, the $150 "standard court cost" may be among the "full costs" to which the successful party is entitled at the conclusion of the litigation. Tenn. Code Ann. § 20-12-101 (2009).

[18]The audio recordings of the legislative debate and numerous committee hearings were provided to us by the legislative History Department of the Tennessee State Library & Archives. Because the legislation was researched and drafted by the Tennessee Judicial Council, we also obtained and reviewed the pertinent records of the Judicial Council from Tennessee's Administrative Office of the Courts.

Juvenile Court, General Sessions Court, and the like. The Council sought to address two basic problems: (1) the lack of uniformity in court costs and the attendant difficulties in calculating them, and (2) "millions" of dollars in court costs that were going uncollected by the clerk's offices. After lengthy study, the bill brought before the legislature addressed these problems by substantially changing how court costs were charged and collected.

As explained by the Judicial Council representatives and by the bill's legislative sponsor, then-Senator Curtis Person,[19] the bill did away with the prior system of charging individual fees for services performed by the clerk's offices. Instead, the Judicial Council went through the laborious process of compiling the total court costs, comprised of all of the fees for particular services, that had been charged by clerk's offices in specified types of judicial proceedings. These total court costs were then averaged for numerous specific types of proceedings, and this information was aggregated. Using this information, the bill set a "standard" amount of court costs that hewed as close as possible to the average total court costs that clerk's offices had charged litigants for hundreds of broad categories of judicial proceedings. Indeed, the bill was presented to the legislature as "revenue-neutral," that is, it was presented as not substantially changing revenues to the clerk's offices. From the explanation of the Judicial Council speakers in legislative committee and that of the legislative sponsor, the standardized amount of court costs was intended to be essentially inclusive of all costs to be charged in the litigation.[20] All of this was intended to achieve uniformity in court costs across the state and to alleviate the difficulties in calculating court costs.

The bill also supplanted the widespread practice of court clerk's offices accepting a surety bond or cost bond, typically executed by the attorney who filed the lawsuit, for the designated amount of court costs. Instead, the bill as originally written required litigants to pay the standardized amount of court costs "up front," at the initiation of the proceeding, in almost all types of civil proceedings.

Thus, as explained by Senator Person and the Judicial Council, the statute was intended to "eliminate[] the need for a cost bond from attorneys, instead providing that clerk's fees are to be paid and collected in advance" except in a few specific types of proceedings such as criminal cases. Indeed, the elimination of the attorney's cost bond drew fierce opposition from some legislators. In legislative committee hearings on the bill, Senator Joe Haynes, a

_____

[19]Senator Person is now the Judge of the Juvenile Court of Shelby County, Tennessee.

[20]Exceptions specifically mentioned in the legislative history are the amount of litigation taxes, which were the subject of separate legislative discussions at the time, and a separate fee for continuances, apparently intended to deter unwarranted continuances.

lawyer by trade, called the bill a "tremendous departure" from the established practice of simply having the plaintiff's lawyer sign a "surety bond" when filing a lawsuit, so that the plaintiff litigant would not be required to come up with cash to pay any court costs until the conclusion of the litigation, and not even then if the costs were taxed to the defendant. He pointed out that the bill as written could present a real problem for a litigant who, while not qualified for a pauper's oath, would have difficulty paying $200 to $300 in court costs on the front end. Senator Haynes and Senator John Ford indicated an intent to oppose the legislation for this reason. This resulted in an amendment to the bill on the Senate floor to permit a plaintiff litigant to file a cost bond instead of a cash payment in certain types of civil judicial proceedings, such as actions originally filed in circuit or chancery court and worker's compensation complaints. This amendment is reflected in the current language in subsection (a) of the statute. *See* Tenn. Code Ann. § 8-21-401(a) ("In proceedings covered by subdivision (b)(1)(A) [original actions filed in circuit or chancery court], or in workers compensation complaints, the attorney filing the action shall have the option to sign a cost bond, in lieu of the party paying the clerk's fees at the time services are requested."). In *all other* types of civil judicial proceedings, *including appeals from General Sessions Court to Circuit Court,* the bill amending Section 8-21-401 was left as originally written, "eliminating" the cost bond.

We note that the legislative history for Section 8-21-401 provides some support for the Bernatskys' alternate argument, that Section 8-21-401 implicitly repeals Section 27-5-103. However, "repeals or alterations of existing statutes are disfavored" and repeal by implication should be found "only when statutes cannot be construed harmoniously." *Elliott v. Cobb*, 320 S.W.3d 246, 251 (Tenn. 2010) (quoting *State v. Hicks*, 550 S.W.3d 515, 523 (Tenn. 2001); *Sharp v. Richardson*, 937 S.W.2d 846, 850 (Tenn. 1996)). In this case, Section 8-21-401 and Section 27-5-103 can be construed harmoniously, so it is not necessary to address the "implicit repeal" argument. As noted above, in appeals from General Sessions Court to Circuit Court, Section 8-21-401(b)(1)(C)(i) requires payment of the standard court cost when the appeal is filed. These court costs are, of course, awarded by the circuit court judge at the conclusion of the circuit court litigation. *See* Tenn. Code Ann. § 20-12-101 ("The successful party in all civil actions is entitled to full costs, unless otherwise directed by law or by a court of record"). Consequently, payment of the standard court cost to the clerk's office at the time the appeal is filed is, by definition, the payment of a cash "bond" for those costs. *See Jacob*, 2012 WL 3249605, at *3 ("appeal bond" is "to ensure payment of the costs of appeal"). Thus, the Section 27-5-103 requirement of an appeal bond remains intact, and Section 8-21-401(b)(1)(C)(i) supplies the "as hereinafter provided" referenced in Section 27-5-103(a) by specifying the amount of standard court cost set forth.

Therefore, after reviewing Sections 8-21-401 and 27-5-103 and the legislative history of both statutes, we conclude that payment of the dollar amount in "standard court cost" listed in

Section 8-21-401(b)(1)(C)(i) at the time an appeal from General Sessions Court to Circuit Court is instituted fulfills the Section 27-5-103 appeal-bond requirement. To the extent that *Jacob v. Partee* reaches a contrary conclusion, it is respectfully overruled.[21] Accordingly, we hold that the Bernatskys satisfied the requirement to "give bond with good security . . . for the costs of the appeal" under Section 27-5-103 by making a timely payment to the General Sessions Court clerk a cash bond for $211.50, which includes the standard court cost set out in Section 8-21-401(b)(1)(C)(i).

## CONCLUSION

"The requirement of a bond in order to perfect an appeal from an inferior court to the circuit court is not a formality. The appeal is not perfected without it." *City of Red Boiling Springs,* 777 S. W. 2d at 708. Our holding today adheres to this principle and seeks to define the minimum appeal bond required to satisfy the jurisdictional requirements of Section 27-5-103. We hold that (1) Section 27-5-103 does not require an appellant to file an appeal bond with no monetary limit, and that the statute may be satisfied by the filing of an appeal bond in an amount certain, to be established by the legislature or its designee; (2) Section 27-5-103 permits an appeal bond in the form of either a cash bond or a surety bond; and (3) Section 8-21-401(b)(1)(C)(i) designates the amount of the Section 27-5-103 appeal bond "for the costs of the appeal." These holdings pretermit all other issues raised on appeal.

The decision of the Circuit Court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellees Designer Baths & Kitchens, LLC, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[21]We also respectfully overrule *Universal Partners Development v. Bliss* to the extent that it reaches a contrary conclusion.